LPER CURIAM. *
At issue is whether an insurance policy issued by relator was cancelled under the provisions of La. R.S. 9:3550 prior to the occurrence of the accident forming the basis for this suit. For the following reasons, we *243 conclude that the policy was properly can-celled, and therefore reverse the judgment of the trial court denying relator’s motion for summary judgment.
On June 7,1994, Linda Gillmore purchased insurance on her 1983 Oldsmobile Cutlass through American Insurance Brokers (“American”), an agent for Southern United Insurance Company (“Southern”). The policy was financed through Sun Premium Financing, Inc. (“Sun”).
Subsequently, Ms. Gillmore failed to make payments on the policy. On October 18, 1994, Sun mailed a notice of cancellation to Ms. Gillmore at her last known address, indicating that her policy would be cancelled effective 12:01 a.m. on October 29,1994 if she failed to cure the default, pursuant to the provisions of La. R.S. 9:3550(G)(2).[1] It also mailed a notice of cancellation to her insurance agent, American. Ms. Gillmore failed to make any premium payments on the policy. Therefore, on October 30, 1994, RSun mailed a copy of the Notice of Cancellation, together with a certification, to Southern, pursuant to La. R.S. 9:3550(G)(3).[2] This request for cancellation asked that the policy be cancelled for non-payment of premiums, effective at 12:01 a.m. on October 29, 1994.[3]
On October 30, 1994, the same day that Sun mailed the notice of cancellation to Southern, an automobile accident occurred involving Ms. Gilknore’s car. After plaintiff filed suit, Southern filed a motion for summary judgment, arguing that because there was no policy coverage on the date of the accident, the company is entitled to dismissal. After a hearing, the trial judge denied summary judgment without assigning reasons.
Southern applied for. a supervisory writ. The court of appeal denied the application, concluding that Sun failed to satisfy the statutory requirements for cancellation because it did not send notice to the insurer prior to the accident.
Southern then applied to this court, arguing the court of appeal erred in its interpretation of La. R.S. 9:3550. According to Southern, the statute requires that upon default, notice shall be given to the insured and insurance agent, which was done, and Ldid not require notice be given to the insurer until after the insured failed to cure the default. Since Sun followed all’ statutory mandates for cancellation of the policy, it asserted plaintiffs policy was cancelled as 12:01 a.m. on October 29, 1994, prior to the time of the accident.
We see merit to Southern’s argument. The clear language of La. R.S. 9:3550(G)(2) provides that the Notice of Cancellation shall be mailed to the insured and “shall also be mailed to the insurance agent negotiating the *244 related insurance contract .... ” [emphasis added]. Under La. R.S. 9:3550(G)(3)(a) and (b), the finance company is only required to mail the insurer a copy of the notice of cancellation after the ten day notice to the insured has expired without the insured curing the default. La. R.S. 9:3550(G)(3)(b) then provides “the effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.”
In the instant case, Sun mailed a Notice of Cancellation to the insured, Ms. Gillmore, and the insurance agent, American, on October 18, 1994. When Ms. Gillmore failed to cure the default within ten days, it mailed a copy of the Notice of Cancellation to the insurer, Southern, on October 30, 1994. Since Sun followed all the statutory requirements, La. R.S. 9:3550(G)(3)(b) clearly provides the effective date of the cancellation was 12:01 a.m. on October 29, 1994, prior to the October 30,1994 accident.
Accordingly, the writ is granted. The judgment of the trial court denying relator’s motion for summary judgment is reversed and set aside, and summary judgment is entered in its favor.
CALOGERO, C.J., would grant and docket.

 Marcus, J., recused; not on panel. Rule IV, Part 2, § 3.

. La. R.S. 9:3550(G)(2) provides:
(G) (2) Upon default of insurance premium contract by the debtor, the premium finance company may mail a notice of cancellation to the insured, at his last known address as shown on the records of the insurance premium finance company. A copy of the notice of cancellation of the insurance contract shall also be mailed to the insurance agent negotiating the related insurance contract whose name and place of business appears on the premium finance agreement. Such notice of cancellation shall show the name of any governmental agency, mortgagee, or third party also requiring notice of cancellation as shown on the insurance premium finance contract.

. La. R.S. 9:3550(G)(3)(a) provides in pertinent part:
(G)(3)(a) Ten days after notice of cancellation has been mailed to the insured, or fourteen days when notice is mailed from outside of this state, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer, by depositing in the mail or with a private carrier within five business days after the date of cancellation, except when the payment has been returned uncollected, a copy of the notice of cancellation together with a statement certifying that:
* 4s * * * *
(b) Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.

.The notice was received by Southern on November 3, 1994.